Would the clerk call the next court, please? 313-0626, Village of Plainfield, Appellee by Joan Myers v. Marsha Cameron, Appellant by Dimitri Goltis Mr. Goltis, good morning. Good morning, Justice McDavid. Good morning, Your Honor. May it please the Court, Dimitri Goltis, Assistant Appellate Defender, on behalf of Marsha Cameron, the Defendant Appellant. Your Honor, Ms. Cameron was convicted of driving while suspended, and she was sentenced to 12 months of court supervision. We've raised three issues on appeal. The first issue, we argue that evidence is insufficient at her bench trial for a rational trial or fact to find that she was suspended at the time of the alleged offense. Second, we argue that Ms. Cameron is entitled to a new trial because Judge Goodman erred by overturning Judge Lund's discretionary interlocutory order in the absence of new facts or circumstances, or in the event that the order was erroneous as a matter of law. The third issue that we argue is that this Court should reverse Ms. Cameron's conviction outright because the Village of Plainfield prosecuted her for a violation of the Illinois Vehicle Code, yet there is not written authorization from the State's Attorney for the prosecution in the record, and not even a reference to written authorization in the record. I would like to comment on all of these issues today, but my argument will focus on the first claim of insufficient evidence and the new trial issue. Of course, if Your Honors have any questions regarding any of the issues, I'll certainly address them. I'd like to start by discussing this Court's jurisdiction. As Your Honors know, the Village has raised a jurisdictional challenge. It's our position that this Court absolutely does have jurisdiction. The Village's argument fails under a Supreme Court decision in Chicago v. Green, and it was also explicitly rejected by the Appellate Court in Honorary Mary Jones. What these two cases say is essentially, if you have a timely filed motion, a post-trial motion that has not been ruled upon, that motion may be amended and the trial court may accept that amendment in its discretion. That's exactly what happened here. Ms. Cameron filed a timely post-trial motion for a new trial. Once the case was transferred to Judge Goodman, the Defense Counsel amended that motion. Judge Goodman accepted the amendment, denied the amended motion, and noticed that it was filed two days later. This Court does have jurisdiction under Illinois law. I would just add that as a practical matter, much of the Village's jurisdictional argument focuses on that, the fact that it was the amended motion that was denied, not the first motion, and that Ms. Cameron failed to re-notice the first motion. As a practical matter, both the first motion and the amended motion are the exact same. They raise the exact same word-for-word arguments, no more, no less. The only difference is that Defense Counsel italicized one of the arguments for added emphasis. Moving on to the claim of insufficient evidence, I would start by emphasizing to your honor that throughout this litigation, the Village has consistently tried to shift the burden of proof onto Ms. Cameron. They continue to do so in this Court. At page 13 of this appellate brief, the Village argues, and I quote, the defendant must introduce enough evidence on the subject charge to raise a reasonable doubt as to his guilt. The Village makes similar arguments on pages 17 and 18 of this brief, at one point concluding, quote, the Village now has the burden of proof in this matter because the defendant failed to introduce enough evidence to create a reasonable doubt. As your honors surely know, that's not the law. Ms. Cameron does not have to prove her innocence. She does not have to submit evidence creating a reasonable doubt. It's absolutely the Village's burden to prove her guilt beyond a reasonable doubt. Unfortunately, the only reason why Ms. Cameron was convicted in this case was because the trial judge, Judge Lund, accepted the State's invitation to shift the burden of proof onto Ms. Cameron. The disputed issue in this case at trial was whether Ms. Cameron's license was suspended on June 6 of 2012. The only evidence on this element came in the form of abstracts from the Secretary of State. It was essentially three abstracts. One was discussed in Officer Heath's testimony, the officer who performed the traffic stop, saying that he looked at his computer in his car, he saw an abstract dated June 6 of 2012, the day of the alleged offense, and it said that she was suspended. Village Exhibit 1, an abstract dated two days later, provided that Ms. Cameron was suspended. However, the defense submitted an abstract, and both parties stipulated to it, that an abstract about a year after the offense denied the suspension for June 6 of 2012. So, as your Honors can see, this is a unique evidence-sharing case. You have conflicting abstracts, official documents from the Secretary of State, some saying she's suspended, some saying that, not saying anything at all. And, importantly, I would note that what makes this case unique is this isn't a case where you have witness A saying one thing, witness B saying something else, and then the charge of fact can say, okay, I believe witness A, I'm going with witness A's testimony. This isn't even a case where you have witness A saying one thing, then witness A saying something different, and then the charge of fact can go, okay, well, witness A, I believed you when you said that, I didn't believe you when you said that. We've got two conflicting documents, and these aren't people. These are documents. And there's not a single fact in evidence for a charge of fact to find one of the abstracts more credible than the other, to assign greater weight to one abstract over the other, and there's no evidence in this record to explain the discrepancies between the abstracts. Now, traditionally, this court, when you review a sufficiency of the evidence claim, you're going to look at the standard review. It's going to tell you we're going to look at the facts and what's most favorable to the state, and we're going to take all reasonable inferences in favor of the state. We would submit that you can't do that here. This is a unique case, and in the absence of evidence allowing Judge Lund to charge of fact to make a credibility finding or to explain the discrepancies between the abstracts, a finding that Ms. Cameron suspended was pure speculation. It just can't be made. You need more facts. Now, Judge Lund, at the village's urging, decided to give greater weight to the village's abstracts as opposed to the defendant's abstracts, and the only reason that Judge Lund gave for that was because Ms. Cameron failed to present evidence explaining why her abstract didn't list the suspension. That's a shift of a burden of proof. That's not a credibility finding. That's not a factual finding. It's just a shift of a burden of proof, and that's improper. So at the end of the day, the judge's finding was that she was suspended with speculation, and we respectfully ask that Your Honors reverse her conviction outright. Alternatively, we request that you vacate your conviction and remand it for a new trial because Judge Goodman did not have authority, or she erred, by overturning Judge Lund's order for a new trial. Judge Lund's order for a new trial was a discretionary interlocutory order, and under Illinois law, it can only be overturned by a successor judge, in this case Judge Goodman, if one of two scenarios is present. There's new facts or circumstances warranting that the order be overturned, such that there's no longer a need for a new trial, or the order has to be erroneous as a matter of law. That's distinguishable from a case where you have an interlocutory order that's not discretionary. In those circumstances, all you need to overturn it is the absence of bad faith for Judge Schott. The diligentness brief says that that's the case here. It's not. The baseline case is where the order at issue is an order for summary judgment. That's not a discretionary issue. We're dealing with a discretionary order here. In either scenario that was met here, there's no new facts or circumstances. The diligentness motion that we consider did not raise any new facts or circumstances. The circumstances are the same. Judge Lund is still related to Ms. Cameron. The order is not erroneous as a matter of law either. Judge Lund had an obligation to avoid an appearance of impropriety. An appearance of impropriety has been found on numerous occasions to be a valid basis to order a new trial. I've cited in my brief the Bradshaw case and the Wheatley case. To explain why there was impropriety, Judge Lund learned for the first time, according to him, that he was related to Ms. Cameron on June 6, 2013, when she told him in his presence that her maiden name was Williams. According to Judge Lund, a light bulb went off. Yet those same facts were available to Judge Lund before a trial. Ms. Cameron had appeared before Judge Lund on numerous occasions, and the name Marshall Williams was in the trial court file on various documents filed before a trial. It was on the citation. It was on the bail bond deposit form, the affidavit of assets and liabilities, the jury waiver, and various orders signed by Judge Lund himself. We would submit that a reasonable person in these circumstances with knowledge of the case file could question Judge Lund's representation when he first learned of his relationship to Ms. Cameron, or at least he first recognized it, on June 6, 2013. A reasonable person could say, well, given all these documents in the record, you knew before trial. Now, the village goes to great lengths in its brief to argue that there was no reason for Judge Lund to view any of these documents in the file, and there's nothing in the record that confirms that he did. Our response is, that's just not true. The record actually indicates otherwise. And I would direct Your Honor's attention to page 16 of the recorded proceedings. On page 16, I'd like to read a brief exchange between Judge Lund and Ms. Cameron. This is from the hearing of February 7, 2013, where Ms. Cameron waived her right to the jury. Quote, the court, all right, ma'am, in my hand is a document entitled Waiver of Trial by Jury. Is that your signature at the bottom? The defendant, mm-hmm. The court, yes. The defendant, yes. We would submit that this exchange evidences that Judge Lund attributed the signature of Marshall Williams to Ms. Cameron when Ms. Cameron was personally present before him. So for these reasons, we believe that Judge Lund's new trial order was not erroneous as a matter of law, and therefore Judge Goodman had no legal basis to overturn it. Finally, I'd like to comment briefly on the issue regarding lack of prosecutorial authority. Under this court's decision, Peoples v. Herman, which I note, Justice Whitten, you were on. I think you were on too, Justice McDade. If a municipal prosecutor obtains a conviction for a violation of the Illinois Vehicle Code and written authorization from the state's attorney does not appear in the record, this court will reverse outright. And that's exactly what happened here. There's nothing in the record demonstrating that the village of Plainfield had written authorization from the Pueblo County State's attorney to go forward with this prosecution. The record also evidences that this was a prosecution for a violation of the Vehicle Code. The citation list lists the applicable statute. The word statute 6255-6-303A appears on numerous occasions in the docket entries. The prosecutor below referred to this as a violation of quote Illinois law, and at no point below did the parties refer to an ordinance. Was this raised below? It was not raised below, but we get passed waiver because where you have a situation where a prosecutor does not have the authority to prosecute a case, that prosecution is annulled. Annullity in various cases has been defined as the equivalent of void. I would submit that this circumstance, although not the same, is analogous to a situation where you have a prosecutor prosecute a case, but that prosecutor isn't licensed to practice the law. In those cases, and I direct the court to People v. Dunstan from the 2nd District, I can give you our citation. It's 316, Bill AB-3760. It's from 2000. Where a prosecutor is unlicensed, the resulting conviction was found to be void. And as your honors know, when you have a void judgment, that void judgment can be challenged at any time and we don't have to deal with forfeiture. Even if we did, we would submit that unauthorized prosecution seriously affects the integrity of the judicial process. Because if the village of Plainfield is unauthorized, they have no more authority to prosecute Ms. Williams and I. And that's just, it's a serious error that affects the integrity of the judicial process. Thank you. I would also add that the village in this brief says it's overly burdensome to include this written authorization in the record. We would submit that it's not. It's just filing a piece of paper that says that the prosecution is authorized. Importantly, the village is not authorized to prosecute this case in the first instance. That authority lies in the state's attorney. And unless you have evidence of a proper delegation of statutory authority, you're going to have an infringement on the authority of the state's attorney. And the filing of one document in the circuit court to indicate that the law is being complied with is not overly burdensome. So for these reasons, unless your honors have any further questions, we respectfully request that you reverse Ms. Camden's conviction outright, or alternatively, transfer her to a new trial. Thank you. Thank you, Mr. Zoltan. Ms. Myers, good morning. Good morning. Good morning, Justices. Counsel. Judges, if I could just briefly address certain of the arguments that counsel just presented to your honors. I'm going to start with just a brief explanation of the facts of this case. Counsel is correct. This is a driving on suspended case. I believe what was failed to be mentioned earlier is that this is a strict liability case, which means at the time of the traffic stop that is the subject of this case, the defendant was either suspended, her privileges were suspended, or she was not. Based on current case law in the state of Illinois, based on state statute, the plaintiff simply has to prove, the village simply has to present two arguments and meet one burden of proof on two elements of the charge. The charge is driving on license suspended. What that means is we have to present evidence beyond a reasonable doubt the defendant was operating a motor vehicle on a public roadway, and at the time that she was doing so, she was suspended. On the date of this trial, we did just that. We presented a certified abstract that was stipulated to by the defendant's attorney and by the defendant, and we presented credible evidence of Officer Heath, the arresting officer that day. The evidence that was presented on behalf of the village included that she was operating the motor vehicle on the public roadway. The defense did not challenge that, and in fact stipulated to that particular fact. The issue became whether or not the driving privileges were suspended. Our abstract, Plaintiff's Exhibit 1, showed that she was suspended on the date of the traffic stop. The date of the traffic stop was June 6th of 2012. The abstract that we entered into evidence that day was stated June 8th of 2012, and clearly showed a suspension of the defendant's driving privileges on that date. But then you had another abstract that showed she wasn't suspended on that date. Yes, Judge, Your Honor, and I am going to address that abstract. That particular abstract is not part of this court's record. It is missing at this point. It wasn't a trial. It was stipulated to the defendant. Correct. And the only information... Related to yours. Yes, it was stipulated at the same time. That is absolutely correct. The only information we have throughout the record with respect to that particular document is that it was purportedly dated approximately one year after the traffic stop. Were you not the trial attorney? I was the trial attorney. So you saw all of this. Did you object to it at the time? No, Your Honor, actually I stipulated to it. Okay. But the document still needs to be part of this court record, and it's the appellant's duty to make it part of the court record, and they've been unable to do so. And I'll address that argument in a moment. At the time, it appeared, based on that abstract, that the abstract was dated one year later, but there was no other information on that abstract purportedly related to this particular suspension. It's still irrelevant. It's a strict liability charge of whether she was suspended at the time of the stop or not suspended at the time of the stop. Our abstract clearly shows she was. But their abstract shows she indicates that it wasn't. I don't know that. We don't have the document available. It was at a trial. At trial it was presented that it was not on there. And now you don't know it? I haven't seen that document for over two years. When you saw it? When I saw it. Was there stipulated to its veracity? That's correct. I'm not sure what your point is here. But the village met its burden, Judge. We've met our burden by providing the evidence that we provided. You've met your burden, but only part way. I mean, isn't the evidence here needs to be proved beyond reasonable doubt? That's correct. It seems to me you've got some doubt there. Well, counsel stipulated in his closing argument that the suspension was in effect at the time. The argument that counsel then made, that defense attorney made that date, and throughout the balance of this proceeding and all post-trial motions, is that there was an error. But there was no evidence offered by the defendant with respect to when that error occurred, how it occurred, when it was removed, if it was removed, who removed it. Wouldn't those proofs be better taken if you had subpoenaed somebody from the Secretary of State's office? That wasn't my exhibit. As far as your own, finding out what the facts, in fact, were at that time. Was there an administrative mistake where it showed up? Or was, you know, there was a mistake on the one of the defendant? There was no question on the plaintiff's exhibit that the suspension was in effect at the time of this traffic stop. No question at all that it was in effect at that time. Under the Illinois Vehicle Code, it is primeficient evidence of what's on that abstract. Now granted, they submitted an abstract as well, but offered no additional testimony, no further evidence to explain how it was removed, when it was removed, why it was removed. Anything that clearly may have been relevant to explain that document, and Judge Lund brought that to their attention when he ruled. And isn't that burden shifting? I don't think, no, Your Honor, I do not think that that's burden shifting, because I think at the close of our argument, we rested our case, counsel made a motion for a directed finding, and the basis of his motion for a directed finding was that, well, you know, my client had insurance on the date. That's all he said. There was no further argument. The court found that we had met our burden at that point. Nothing shifted. I'm not suggesting that. I know counsel had suggested that earlier today. I'm not suggesting that the burden shifts. I just believe that the village had submitted enough evidence at that point. It was up to the defendant then to provide any additional evidence to refute any of our evidence, which he failed to do. Ms. Myers, you had an abstract that showed that Ms. Cameron was driving on a suspended license. You then became aware of a second abstract that indicated that her license had not been suspended on that date. You're the prosecutor. You have an obligation to prove that she's guilty beyond reason of doubt. If you have two conflicting pieces of evidence, it's your burden to figure out which one of those is right. I understand that, Your Honor, but that particular piece of evidence was stipulated to that day. I would not agree that it showed that she was not suspended on that date. What it showed was a year after the traffic stop that the information had been removed. It didn't show that she wasn't necessarily suspended on that date. It simply showed that some action had been taken by who? But we don't know that. Pardon me? I mean, you're speculating, and that may very well be true. But you don't know that. And it's really speculation on your part, isn't it, that that's what happened. I mean, it could very well be that. It could also be an administrative error, maybe a name, a little initial thing, where things became whatever her name is now. Ms. Cameron? I don't know. I mean, I just don't know, as I read your briefs and listen to your arguments, what happened. And when I suspect it's one or the other, for me, it's all speculation, too. I don't know. But it is the village's position that the reason for that issue comes down to. Judge, I believe that the evidence was sufficient. It is the village's position that the testimony and the evidence that was submitted that day was sufficient for the village to meet its burden on a particular charge, a strict liability charge of driving on a suspended license. Well, you know, in the chain of things, there's your case in chief as the village prosecutor. Correct. And so your argument is, to be just very basic and fundamental about this, your argument is that we presented a prima facie case. And, of course, your burden of proof of beyond reasonable doubt stays with you during the entire trial. It stays with you during the entire trial. Yes. There's no shifting of the beyond reasonable doubt. Correct. So you made a prima facie case when you showed the abstract, that on the day in question the license was suspended. Correct. So then it was the defense chance opportunity. The defense presents an abstract with no indication that she was suspended on that day in question. They presented an abstract that was, both abstracts were stipulated into evidence. So you have abstract plaintiffs, or the prosecutor's abstract. You have the defense abstract. One says suspension. One says there's no evidence of a suspension. And the village also presented the credible testimony of Officer Heath. Yeah, and the officer's testimony. But you've got these two abstracts. Judge, but before you today, if I could just quickly address the argument that we presented in our brief regarding the record being incomplete. That abstract is not part of this record today. And it is clear under Illinois law, the Illinois Supreme Court has addressed this particular issue, that it's the appellant's burden to present a sufficiently complete record of the proceedings at trial. They have failed to do so. But isn't the record clear enough to say that one showed suspension, and we've got that one? The other one that we don't have showed no suspension. Isn't that clear, the record that we have? That particular document, Defense Exhibit 1, showed a year later that the information had been removed. Yeah, there was no information about a suspension. But that doesn't necessarily mean that the suspension was not in effect at the time of the traffic stop. I know, but who has the burden to prove beyond a reasonable doubt? Obviously the village does. I mean, that's the reason I'm asking the question. It's not like the record is devoid of anything and somebody just said, you know, I've got an abstract, never presented it, there was no evidence at the trial or anything like that about it. I think the Secretary of State's going to not show that suspension. That's not what happened here. There was a defense document presented. It's referenced. We've got references to it from argument in the judge's ruling and everything else. Suspension, evidence, no evidence of suspension. But I would still argue, Judge, that we still have the defense attorney in closing argument stipulating to the suspension being in place. Right, there's no doubt about that. We still have the credible testimony of the officer. And we have an incomplete record before the court today. We don't have that document for this panel to review. We don't have that document that's part of this record. And based on the standard of review, I think that that's a critical issue. You're not doubting the transcript? I'm not doubting the transcript, Judge. There's references to the? The references throughout the transcript, my recollection is the references throughout the transcript are that there is an exhibit that was stipulated to by both parties and that it is dated approximately one year after the traffic stop and that it doesn't show, it shows that something had been removed related to the suspension. It doesn't show a suspension? It doesn't show a suspension. It doesn't show something was removed. It doesn't show a suspension. But again, Your Honor, there's been no, there was no evidence provided by the defendant on that date at trial or in any post-trial proceedings related to when, why, how, or an explanation for it. And in fact, there's no defense in the statute for this. It's strict liability. She was suspended. Isn't that your issue? I think the point that we're all making here is just where the burden lies. I mean, you're saying all these things weren't proved, but by whom? Certainly not the defendant. The defendant doesn't have that burden. The village does. I understand that the village has that burden and it is the village's position that it had met its burden, that the evidence was sufficient. That's very good. If I could? One other thing, Ms. Myers, just one other thing. You keep saying this is a strict liability offense, and it is. But the strict liability flows from her actually driving without, on a suspended license, not driving on a record that may defectively show that her license was suspended. So you haven't proven that she was actually driving on a suspended license. Judge, I was just simply explaining the two elements of the charge, that we need to provide evidence that she was operating the motor vehicle and that she was suspended at the time. Your Honors, if I could briefly address the prosecutorial authority argument that was presented by counsel. Again, that argument has been waived. I think the Wittar case is very clear on that. That was cited in our brief. The authority of the village to prosecute this case was not raised at any time during the course of the trial proceedings, and it was not raised in any post-trial motions where I would rely on the Wittar case, which again we have cited in our brief, to support that argument. And with respect to the argument that was previously presented with respect to Judge Goodman and her ability to, or her authority rather, to address this interlocutory order, at the time, and it's clear in the record, at the time she was the presiding judge of the Misdemeanor Division, and this was transferred back to her after Judge Lund perceived that he had to recuse himself from the case. It has always been the village's position that that was not necessary, that the trial had already taken place, that there was no reason for Judge Lund to recuse himself at that point. Whose call is that? That is the judge's. So Judge Lund, upon learning that he was related to the defendant, and I might add, throughout this entire proceeding, the only person who really knew of this relationship was the defendant. She was there on 10 or 11 separate occasions standing in front of Judge Lund and never disclosed this. It was only after it came up in the course of a conversation, after oral argument on the motion for a new trial, was this information disclosed when Judge Lund was about to rule against them on that particular motion. Did she say, I'm related to you? The defense attorney utilized Ms. Cameron's maiden name of Williams or married name of Williams, and the judge said, a light bulb just went on, am I related to you? And she said, yes, you are. So she didn't disclose it to him. But she knew the entire time, and counsel knew two days prior. I'm just re-referencing the argument. There are many documents in the file, but there would have been no reason for Judge Lund to review any of those documents. He was not the original judge on the case. Judge Levis was the original judge on the case. So many of the documents that were in there that possessed her name of Williams, I don't think that most judges are going to go through the entire file and examine any of those signatures in the normal course of their proceedings. So I would argue that that argument just is insufficient. Again, I would readdress the issue of the sufficiency of the evidence. I believe the village met its burden on this case. It provided the credible testimony of the officer. It provided an abstract that shows she was suspended on the date of the stop. And I would ask that this court affirm the decision of the lower court. Thank you, Ms. Levy. Mr. Goss, is there any rebuttal? Yes, Your Honor. I want to start, I guess, by clarifying the record as to what is in it and what is not. It's true that we do not have the defense abstract anymore. It is lost. But we do know some of the things that were in it and some of the things that were not. It was introduced in the evidence. It was introduced in the evidence by both parties. And when it was introduced, it was referred to as an abstract from the Secretary of State, an official abstract. So we know it's from the Secretary of State. We also know that it does not list the suspension for June 6, 2012. We know that it does not explain why. Ms. Myers-Below said it. We don't know why it doesn't list the suspension because the abstract doesn't tell us. Therefore, we know that it does not list a rescission. May I ask, I've looked at the plaintiff's abstract, and as you go down it, it says she was suspended on this day, and then it says what happened with regard to that suspension. So if there's some reason why that suspension is cleared up, the abstract reflects it. It doesn't just take off the original violation. It says how it was cured. Absolutely, Your Honor. It lists a start date for the suspension, and it also lists a termination date. And there's various previous suspensions on the village's abstract that list the start date and the termination date. They don't just disappear. The village's abstract also lists a previous rescission. So you're absolutely correct. And there's nothing there that says she was suspended on June 6 and that she then brought in her insurance card and showed that she had the valid insurance, and therefore it was removed. No. Counsel referred to defense counsel at trial in closing argument making some kind of stipulation that Ms. Cameron was in fact suspended. Two comments on that. Number one is you don't make stipulations after the close of the evidence. Closing argument is not evidence. And two, that's not what defense counsel said. I have a copy of the report of proceedings. I'd like to read some of it to the court. This is from defense counsel from pages 34 and 35. Quote, if Ms. Cameron was validly suspended on June 6, 2012, there would be a suspension there. He's referring to Defense Exhibit 1. There was prior to this day and State's Exhibit 1 suspension, and that's why Ms. Cameron was pulled over that day. We'll stipulate to that. But the Secretary of State made a clerical error that they have since revised. I don't think that indicates that he's stipulating that she was in fact suspended. He's referring to that Village Exhibit 1 lists the suspension. That's all. He clearly after that says that it was a clerical error that has since been removed. That was his position during closing argument. It's not a stipulation. Ms. Myers also discusses that Ms. Cameron knew of this relationship to Judge Lund throughout the litigation. There's nothing in the record that confirms that. It didn't come up until June 6 of 2013 when Judge Lund said, I'm related to you, and Ms. Cameron said, yes, you are. And then defense counsel said, yeah, I just realized that two days ago. Well, the earliest we know is that two days before that date, Ms. Cameron knew that she was related to him. There's nothing in evidence suggesting that she knew prior to that. Aside from that, unless Your Honors have any further questions, we'd again ask that you reverse, outright, or remand for your new trial. There are no further questions. Thank you, Mr. Wilkins. Thank you. We thank both of you for your arguments this morning. We will take the case under advisement and will issue a written decision as quickly as possible. The court will stand at brief recess for a panel change.